

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 15, 2019**

**United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| Francisco U. Nunez, | § | Case No. 17-33845-hdh7 |
| | § | |
| Debtor. | § | |
| | § | |
| Automotive Finance Corporation, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. No. 18-03004 |
| | § | |
| Francisco U. Nunez, | § | |
| | § | |
| Defendant. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On January 15, 2018, Automotive Finance Corporation (the "Plaintiff") filed a complaint initiating the above-captioned adversary proceeding against Francisco U. Nunez (the "Defendant"). Through the complaint, the Plaintiff seeks a finding that certain debts owed to it by

the Defendant are nondischargeable. The Defendant was the owner and sole proprietor of a used car dealership named Tex-Dom Auto Export (the "Dealership") that obtained floor plan financing from the Plaintiff. The Defendant also executed a personal guaranty of the Dealership's obligations to the Plaintiff. The Plaintiff alleges that the Defendant sold three vehicles (the "Secured Vehicles") but intentionally failed to pay the Plaintiff and failed to hold the sale proceeds in trust for the Plaintiff, as he was contractually required to do. The Plaintiff also alleges that the Defendant transferred the Secured Vehicles without receiving full payment for the vehicles and without transferring title, and that these actions constitute fraud. The Plaintiff ultimately seeks a determination that its claim against the Defendant is nondischargeable pursuant to Bankruptcy Code sections 523(a)(2)(A), 523(a)(4), and 523(a)(6).

The Court held trial in this case on March 4, 2019. After trial, the Court took the matter under advisement. The following are the Court's Findings of Fact and Conclusions of Law, issued pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable in adversary proceedings, by Federal Rule of Bankruptcy Procedure 7052.[1] For the reasons further described below, the Court finds and concludes that in this case, the Plaintiff has not satisfied its burden to except its claim from discharge under sections 523(a)(2)(A), 523(a)(4), or 523(a)(6).

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334. The matters in this adversary proceeding are core matters under 28 U.S.C. § 157(b)(2)(A) and (I),

---

[1] Any Finding of Fact that more properly should be construed as a Conclusion of Law shall be considered as such, and *vice versa*.

as the adversary proceeding involves a determination as to the dischargeability of a particular debt. Venue for this adversary proceeding is proper pursuant to 28 U.S.C. § 1409(a).

## FINDINGS OF FACT

On or about September 27, 2010, the Defendant executed a Demand Promissory Note and Security Agreement (the "Note") as the owner and sole proprietor of the Dealership. Under the terms of the Note, the Defendant promised to pay the Plaintiff fifty thousand dollars, or such greater or lesser principal amount as may be advanced by the Plaintiff, together with interest. Specifically, the Defendant represented to the Plaintiff in the Note that the Defendant would hold funds derived from the sale of vehicles purchased by the Defendant and financed by the Plaintiff in trust for the benefit of the Plaintiff, and that the Defendant would pay these funds to the Plaintiff within forty-eight hours after the disposition by sale.[2]

The particular debts that the Plaintiff seeks to except from discharge in this case arise from the Defendant's alleged pre-petition sale of the following Secured Vehicles that were financed by the Plaintiff under the terms of the Note:

| Plaintiff's Stock # | VIN | Year | Make | Model |
| --- | --- | --- | --- | --- |
| 352 | 5TDJKRFH9FS134561 | 2015 | TOYOTA | HIGHLANDER |
| 365 | JTEZU5JRE5066264 | 2014 | TOYOTA | 4RUNNER |
| 366 | 5NPDH4AE0FH564903 | 2015 | HYUNDAI | ELANTRA |

Ultimately, the Plaintiff seeks a nondischargeable claim for the principal balance due on the Secured Vehicles in the amount of $58,147.68 plus attorneys' fees.

---

[2] *See* Demand Promissory Note and Security Agreement ¶ 2.6, Plaintiff's Exhibit 1 ("or otherwise of an item of Purchase Money Inventory . . . .").

At trial, the Plaintiff presented numerous exhibits, including signed invoices for the Secured Vehicles.[3] Although the signatures on the invoices for the 4Runner and Highlander appeared to belong to the Defendant, the Defendant testified that those documents were not signed by him and that he never received payment from the sale of those vehicles. Rather, the Defendant stated that Mr. Eugenio Brito ("Mr. Brito") purchased the vehicles using financing under the Note and sold those vehicles himself. Mr. Brito is the owner of Texas Motor Exports, LLC ("Texas Motor Exports"), another used car dealership that shares its car lot with the Dealership. The Defendant claimed Mr. Brito had access to the line of credit the Plaintiff extended to the Defendant.

As to the Elantra, the Defendant admitted that he sold that vehicle for $12,300, but he testified that he only received a $6,000 payment. The Defendant testified that he generally deposited all funds into the Dealership's single bank account, that the Plaintiff had access to that account through blank checks signed by the Defendant, and that the Plaintiff would periodically complete checks to itself from the Dealership's bank account for interest payments on unsold vehicles. Without bank records, it is difficult to discern whether the $6,000 was actually deposited as the Defendant claims, and if it was deposited, how it was ultimately used. The Plaintiff presented documents specifically relating to the Elantra showing that the $6,000 was not credited against the loan for the Elantra, but it is possible that the Plaintiff withdrew those funds from the Dealership's bank account and attributed them to interest payments on other vehicles rather than to a principal payment on the loan for the Elantra.

---

[3] *See* Plaintiff's Exhibits 7, 10, 13.

## CONCLUSIONS OF LAW

The Plaintiff seeks relief under sections 523(a)(2)(A), 523(a)(4), and 523(a)(6) of the Bankruptcy Code. In an action to determine the discharge of a specific debt, the Plaintiff has the burden of proof under a preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

To obtain relief under section 523(a)(2)(A), the Plaintiff must show that the Defendant owed the Plaintiff a debt "for money, property, services, or an extension, renewal, or refinancing of credit" that was "obtained by false pretenses, a false representation, or actual fraud." False representations and false pretenses within the meaning of section 523(a)(2)(A) require that the creditor prove (i) the existence of a knowing and fraudulent falsehood, (ii) describing past or current facts, (iii) that was relied upon by the creditor. *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1292-93 (5th Cir. 1995).

By contrast, a cause of action for actual fraud under section 523(a)(2)(A) exists when a debtor makes a promise of future action which, at the time it was made, he had no intention of fulfilling. *Bercier v. Bank of Louisiana (In re Bercier)*, 934 F.2d 689, 692 (5th Cir. 1991). The creditor must prove that (1) the debtor made a representation; (2) the debtor knew that the representation was false at the time it was made; (3) the debtor made the representation with the intent and purpose to deceive the creditor; (4) the creditor relied on the representation; and (5) the creditor sustained a loss as the proximate result of its reliance on the representation. *Selenberg v. Bates (In re Selenberg)*, 856 F.3d 393, 398 (5th Cir. 2017). In addition, the term "actual fraud" as used in section 523(a)(2)(A) encompasses fraudulent conveyance schemes, even if those schemes did not involve a false representation by the debtor. *Husky International Electronics, Inc. v. Ritz*, 136 S. Ct. 1581, 1590 (2016).

The Plaintiff alleges that the Defendant committed fraud in securing advances from the Plaintiff and by transferring the Secured Vehicles without being paid in full. The Plaintiff also alleges the Defendant made false representations to the Plaintiff by (1) representing that he had good and marketable title for the Secured Vehicles, and (2) representing that at the time of each advance, he had not defaulted under the terms of the Note. Contrary to the Plaintiff's assertions, the record suggests that Mr. Brito was the main actor responsible for the sales of the 4Runner and the Highlander. As to the Elantra, the Defendant admitted he sold that vehicle and received some proceeds from the sale, but the testimony suggests that those proceeds were deposited in an account that the Plaintiff had access to. To the extent the Defendant made representations with respect to these vehicles, the Plaintiff has not satisfied its burden in proving the Defendant knew those representations were false at the time they were made or that the Defendant acted with fraudulent intent. For these reasons, the Plaintiff's claim under section 523(a)(2)(A) fails.

Section 523(a)(4) excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." The Plaintiff first alleges the Defendant committed defalcation under this section, which requires that the Plaintiff show there was a fiduciary relationship between the parties at the time the debt was created. *Tex. Lottery Comm'n v. Tran (In re Tran)*, 151 F.3d 339, 342-43 (5th Cir. 1998). The concept of a fiduciary capacity under section 523(a)(4) is narrower than it is under general common law and is limited to instances involving express or technical trusts. *Id.* To determine whether an express trust has been created, the Court must look to both state and federal law. *Angelle v. Reed (In re Angelle)*, 610 F.2d 1335, 1341 (5th Cir. 1980). Under both federal and Texas law, an express trust requires that there be an intent to create a trust relationship. *See* Tex. Prop. Code § 111.004(4); *see also Mabank Bank v. Grisham (In re Grisham)*, 245 B.R. 65, 71 (Bankr. N.D. Tex. 2000).

In this case, the Plaintiff argues there was an express trust between the parties based on the following language from paragraph 4.0 of the Note:

> Upon the sale of any item of Purchase Money Inventory, Dealer shall hold the amount received from the disposition of inventory in Trust for the benefit of LENDER and Dealer shall pay to LENDER, in accordance with Section 2.6, an amount equal to the unpaid balance of the Purchase Money Inventory Obligations and Obligations relating to such Purchase Money Inventory.

The Plaintiff claims that the Defendant "was clearly put on notice at the time he executed the Note that he was undertaking the special responsibilities of a trustee with respect to the [sale proceeds]."[4] The Court disagrees. The Defendant speaks limited English and required a translator at trial. Although the Defendant is bound by the terms of the Note, his testimony revealed that he did not understand the terms of the Note when it was signed. The mere fact that the Note contains "in trust" language is insufficient to establish a fiduciary, trust relationship. *See First Nat'l Bank v. Parr (In re Parr)*, 347 B.R. 561, 565 (Bankr. N.D. Tex. 2006). In addition, unlike the cases that the Plaintiff relies upon, the Note did not provide that the Defendant segregate the alleged trust funds into a separate account. *Cf. Kubota Tractor Corp. v. Strack (In re Strack)*, 524 F.3d 493, 495 (4th Cir. 2008); *Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.*, 783 F.2d 480, 484 (5th Cir. 1986). Rather, the behavior of both parties indicates that the proceeds of vehicles were not being treated as property held in trust. The Defendant deposited all proceeds from the operation of the Dealership into a single bank account, and the Plaintiff effectively had access to that account. The Defendant gave the Plaintiff signed blank checks, and the Plaintiff would periodically complete the amounts on those checks and take money out of the Defendant's commingled bank account regardless of whether cars were sold. Based on these facts, the Court does not believe

---

[4] *Standard Joint Pretrial Order* at p. 6 [Docket No. 27].

there was intent to create an express trust. Therefore, the Plaintiff has not met its burden of proof for defalcation under section 523(a)(4).

The Plaintiff next alleges the Defendant committed embezzlement, which is defined for purposes of section 523(a)(4) as the "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998). To prove embezzlement, the Plaintiff must show that (1) the debtor appropriated funds, (2) the appropriation was for the debtor's use or benefit, and (3) the debtor did the appropriation with fraudulent intent. *Smith v. Hayden (In re Hayden)*, 248 B.R. 519, 525 (Bankr. N.D. Tex. 2000) (listing cases).

It is undisputed that the Plaintiff advanced funds to the Defendant and entrusted these funds with the Defendant pursuant to the terms of the Note for the purpose of purchasing the Secured Vehicles. At trial, the Defendant admitted he received $6,000 for the sale of the Elantra.[5] He later testified that all of the proceeds he received from the Dealership went into a single bank account from which the Plaintiff regularly withdrew funds. But the Plaintiff maintains it never received any sale proceeds from the Elantra.[6] While these facts may satisfy the first element of a claim for embezzlement, the Court does not believe the Plaintiff has met its burden of proof as to the second and third elements. There was no testimony or line of questioning suggesting that the Defendant actually used these funds for his personal use or benefit, and the Court is unable to conclude from the surrounding circumstances that the Defendant acted with fraudulent intent. For these reasons, the Plaintiff's claim for embezzlement under section 523(a)(4) also fails.

---

[5] Although the Defendant admits in his response to Interrogatory No. 5 that he received partial payment of the 4Runner from Texas Motor Exports, the Plaintiff has not carried its burden in proving the actual dollar amount the Defendant allegedly received. *See* Plaintiff's Exhibit 4.

[6] *See* Dealer Receipts Report, Plaintiff's Exhibit 17.

Finally, section 523(a)(6) excepts from discharge any debt incurred for willful and malicious injury by the debtor to another entity. Under the circumstances, the Court does not find the Defendant's actions to have been willful and malicious. In addition, while not dispositive, the Court is hesitant to find a willful and malicious injury in the context of a breach of contract rather than a tort claim,[7] and the consequences of a debtor's alleged failure to remit proceeds owed to a lender flow more naturally from other subsections of section 523.

## **CONCLUSION**

In conclusion, the Plaintiff did not meet its burden of proof to establish an exception to discharge under sections 523(a)(2)(A), 523(a)(4), or 523(a)(6). More generally, the Plaintiff failed to carry its burden of showing that there was a fiduciary relationship or that the Defendant acted with any intent to deceive, defraud, or injure the Plaintiff. Rather, the parties had been doing business together for about seven years before the Plaintiff claims the Defendant defrauded it with respect to these three cars, and the facts seem to show that the Plaintiff speaks little English and perhaps exercised poor business judgment in some of his business dealings. For all the foregoing reasons, the objection to discharge of the Plaintiff's claim and all other relief requested by the Plaintiff is denied.

As a final note, the Defendant has requested attorneys' fees under section 523(d). By the express terms of the statute, in order to invoke section 523(d), the debtor must prove that a creditor unsuccessfully sued for the discharge of a "consumer debt." *In re Williams*, 224 B.R. 523, 529 (B.A.P. 2d Cir. 1999). The Bankruptcy Code defines a "consumer debt" as a "debt incurred by an

---

[7] *See* 4 Collier on Bankruptcy ¶ 523.12[1] (Alan Resnick & Henry J. Sommer eds., 16th ed. rev. 2018) ("Section 523(a)(6) generally relates to torts and not to contracts." Further, "courts must be careful to preserve the elements of nondischargeability . . . found in other, more specific [] subsections of section 523(a). . . .").

9

individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). The debt at issue in this case was not a consumer debt, and therefore no award of attorneys' fees is appropriate.

###END OF FINDINGS AND CONCLUSIONS###